UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DIANA HENDERSON-MARQUIS,<br><br>       Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>       Defendant. | CASE NO.     C05-5024RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 30, 2005 |

Plaintiff, Diana Henderson-Marquis, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-six years old.[1] Tr. 25. She has a high school education and past work experience as a housekeeper. Tr. 55, 60, 67.

Plaintiff filed an application for disability insurance benefits on August 23, 2002, alleging disability

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

as of November 1, 1997, due to post polio muscle weakness, pain and stiffness in her hip, depression, and severe hearing loss in one ear. Tr. 13, 25, 48-50, 54. Her application was denied initially and on reconsideration. Tr. 25-26, 31. Plaintiff requested a hearing, which was held on December 9, 2003, before an administrative law judge ("ALJ"). Tr. 372. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 372-410.

On April 30, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since August 1, 2001;

(2) at step two, plaintiff had a "severe" impairment consisting of post polio syndrome and an affective disorder with a history of depression, currently in remission;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff could perform other jobs existing in significant numbers in the national economy.

Tr. 23-24. Plaintiff's request for review was denied by the Appeals Council on December 7, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On January 12, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1, #3-#5). Specifically, plaintiff argues that decision should be reversed for an award of benefits for the following reasons:

(a) the ALJ erred in rejecting the opinion of plaintiff's treating physician;

(b) the ALJ erred in assessing plaintiff's residual functional capacity; and

(c) the ALJ erred in finding plaintiff capable of performing other jobs existing in significant numbers in the national economy.

The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends this matter be remanded to the Commissioner for an award of benefits.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2002. Tr. 14. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.  The ALJ Did Not Err in Evaluating the Opinion of Plaintiff's Treating Physician

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In mid-September 2003, plaintiff was seen for a complaint of left shoulder pain, which she stated she had been having "for about a month." Tr. 327.  She was diagnosed with "[l]eft shoulder bursitis, etiology unclear." Id.  Later that month, plaintiff saw her treating physician, Dr. Allan LaBerge, reporting continuing pain in her left shoulder. Id.  Dr. LaBerge found her to have "obvious decreased range of motion in that shoulder. Id.  While plaintiff's reflexes were "down a little bit on her left side," her sensation was intact, and she had "nearly non-painful" neck range of motion. Id.  Dr. LaBerge suspected she had "rotator cuff problems." Id.  He gave her a note, which stated she might qualify for "short-term disability" because her

REPORT AND RECOMMENDATION
Page - 4

left arm was "impaired enough that she can't work." Id.

In early January, 2004, plaintiff's attorney sent Dr. LaBerge a questionnaire to complete concerning plaintiff's application for social security disability benefits. Tr. 342-44. In that questionnaire, Dr. LaBerge stated that while plaintiff had been a patient of his "for years," she sought treatment for shoulder problems only twice in September 2003. Tr. 342. He further stated that plaintiff had "fatigue," which caused her to lie down for twenty to thirty minutes "during the middle of the day." Id. Dr. LaBerge felt her pain would "worsen" if she had to work on a regular and continuous basis. Tr. 343. He did not know if plaintiff would miss any work due to her impairments, but thought she was capable of sedentary work, and stated that the limitations specified in the questionnaire had existed since at least mid-September 2003. Tr. 343-44. Dr. LaBerge concluded as follows:

> She may be disabled due to post-polio syndrome – at some point. Currently she needs an MRI and referral to orthopedic surgeon for her shoulder and more physical therapy for her back and hip. If she had these things her condition would be better and possibly good enough to return to work. In her current condition, she is disabled.

Tr. 344 (emphasis added).

With respect to Dr. LaBerge's early January 2004 opinion regarding plaintiff's disability, the ALJ found in relevant part as follows:

> I do not accord much weight to the findings of Dr. LaBerge, as objective testing shows the claimant did not have as severe a problem with her left shoulder as he has concluded. Moreover, the claimant is right-hand dominant, thereby negating the full need of her left shoulder to perform work. Finally, he noted her shoulder problem did not meet Social Security duration standards.

Tr. 22. Plaintiff argues these reasons for rejecting Dr. LaBerge's opinion are inadequate. The undersigned, however, finds the ALJ's determination to be supported by substantial evidence.

First, as noted by the ALJ, Dr. LaBerge did not indicate that plaintiff would be disabled due to her shoulder impairment for the length of time required by the Social Security Act. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must prove she suffers from medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). In addition, while Dr. LaBerge did find tenderness and decreased range of motion on examination, x-rays of plaintiff's left shoulder in mid-September 2003, were negative, and her sensation and reflexes were essentially intact. Tr. 327, 336-37. Thus, although the fact that plaintiff is right-hand dominant is a questionable basis upon which to reject the opinion of a treating

REPORT AND RECOMMENDATION
Page - 5

physician, the undersigned finds the above to reasons to be valid.

Most significantly, however, is the fact that Dr. LaBerge's initial and only findings regarding the presence of a left shoulder impairment were obtained more than nine months after her insured status had expired (Tr. 327), and his opinion regarding her disability was provided more than a year thereafter (Tr. 344). As Dr. LaBerge opined in early January 2004, in plaintiff's current condition, she was disabled. Tr. 344. In addition, with respect to plaintiff's post polio condition, Dr. LaBerge stated merely that she might become disabled "at some point." Id. Thus, the findings and opinion of Dr. LaBerge regarding plaintiff's physical impairments fail to show she was disabled at any time prior to her date last insured. Indeed, Dr. LaBerge's diagnostic notes and clinical findings regarding her impairments prior to that date were all fairly unremarkable. See Tr. 228-29, 231-34, 236, 245, 328-29.

III.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> I find the claimant retains the residual functional capacity to perform the exertional demands of light work. However, she does have some limitations precluding her from performing a full range of light work. Those limitations include avoiding concentrated exposure to hazards, and occasional postural limitations. Also giving the claimant the benefit of much doubt, in view of the fact it is unlikely her mental impairment is presently severe, she should only perform routine, repetitive work.

REPORT AND RECOMMENDATION
Page - 6

Tr. 22. Plaintiff argues this residual functional capacity assessment failed to take into account the "severe" shoulder limitations noted by Dr. LaBerge. As discussed above, however, the evidence in the record shows that plaintiff did not have any such limitations prior to or as of her date last insured. The ALJ thus was not required to include those limitations in the above residual functional capacity assessment. Plaintiff further argues, however, that the ALJ also erred in not including in that assessment the fact that she has moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace.

The medical evidence in the record concerning plaintiff's limitations in these areas is mixed. On the one hand, neither of plaintiff's mental health treatment providers found her to be moderately limited in those areas, although one of them did find her to be moderately limited in her ability to perform routine tasks. See Tr. 153, 159. On the other hand, the non-examining consulting psychiatrist and psychologist in the record both found she had at least some moderate limitations in these areas. Tr. 272, 276-77. Indeed, the ALJ himself found plaintiff's mental impairments resulted in moderate difficulties in those areas. Tr. 19. As such, these limitations should have been included in the ALJ's assessment of plaintiff's residual functional capacity. Because the ALJ did not do so, he erred.

Plaintiff also argues the ALJ erred in not including in her residual functional capacity assessment the need to take a break from standing and/or walking every thirty to forty minutes found by Dr. David Hasleton, who examined plaintiff in late May 2002. Tr. 138. Although the ALJ considered Dr. Hasleton's report (Tr. 15), he failed to provide any reason for why he did not adopt this limitation and include it in his assessment of plaintiff's residual functional capacity. To this extent, the ALJ erred as well.

IV.  The ALJ Erred in Finding Plaintiff Capable of Performing Other Work Existing in Significant Numbers in the National Economy

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by

REPORT AND RECOMMENDATION
Page - 7

substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

The ALJ posed a hypothetical question to the vocational expert, which contained substantially the same limitations as those in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 396-97. In response, the vocational expert testified that while an individual with that residual functional capacity could not perform plaintiff's past relevant work, he or she would be able to perform the light, unskilled job of office helper, and the sedentary, unskilled jobs of food/beverage order clerk and electronics inspector. Tr.397-98. Based on the testimony of the vocational expert, the ALJ found that these jobs existed in significant numbers in the national economy, and that plaintiff thus was not disabled at step five of the disability evaluation process. Tr. 23-24.

Plaintiff first argues that pursuant to Social Security Ruling ("SSR") 96-8p, she should have been found disabled because of her need to lie down several times during the day and her need to miss several days of work per month. Other than plaintiff's own statements and testimony, however, there is nothing in the record to support her claim that she had such limitations during the relevant time period. Dr. LaBerge did state in early January 2004, that plaintiff's "fatigue" caused her to lie down for twenty to thirty minutes "during the middle of the day." Tr. 342. As discussed above, however, that opinion concerns a period of time long after plaintiff's date last insured already had expired. Dr. Hasleton did opine during the relevant time period that plaintiff would need a break every thirty to forty minutes. Tr. 138. However, he did not state that she would need to lie down during such breaks. The ALJ, furthermore, discredited her symptom complaints and testimony, a determination which plaintiff has not challenged here.

Plaintiff next argues that because the ALJ erred in failing to include in either his assessment of her residual functional capacity or the hypothetical question he posed to the vocational expert the need to take a break every thirty to forty minutes as found by Dr. Hasleton, the hypothetical question the ALJ posed to the vocational expert is unreliable. The undersigned agrees. As discussed above, the ALJ failed to provide any reason for not adopting this limitation or including it in his assessment of plaintiff's residual functional capacity. The ALJ, therefore, also erred in failing including it in the hypothetical question he posed to the vocational expert. Thus, because the hypothetical question did not describe accurately all of the limitations plaintiff had, it could not be relied on by the ALJ.

Finally, plaintiff argues the ALJ erred in finding she was capable of performing the three jobs he

REPORT AND RECOMMENDATION
Page - 8

found she could do. The Commissioner concedes that given plaintiff's age and skill level, she could not compete for the two sedentary, unskilled jobs the vocational expert identified. Defendant's Brief, p. 4; see also Distasio v. Shalala, 47 F.3d 348, 349-50 (9th Cir. 1995) (claimant closely approaching advanced age, with high school education, having no transferrable skills, and limited to sedentary work, should have been found disabled under Social Security Regulations). Plaintiff further argues, however, that given the fact that the ALJ has limited her to doing routine, repetitive work (Tr. 22), she also is unable to perform the job of office helper. Again, the undersigned agrees.

The Dictionary of Occupational Titles ("DICOT") defines the job of office helper to require "Level 2" reasoning. DICOT 239.567-010. The DICOT defines Level 1 through 3 reasoning as follows:

>LEVEL 3
>
>Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
>
>LEVEL 2
>
>Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
>LEVEL 1
>
>Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DICOT, Appendix C. The definition of Level 1 reasoning, therefore, expressly references "simple one- or two-step instructions," whereas the definitions of Level 2 reasoning clearly deals with more "detailed" instructions involving a few to several "concrete variables." Id. While the DICOT does not explicitly state that Level 1 reasoning is the same as routine, repetitive work, a commonsense reading of the DICOT's definitions indicates that Level 1 reasoning is more analogous to the ability to perform routine, repetitive work tasks than is Level 2 reasoning.

The DICOT's description of the tasks involved in the job of office helper also shows that more than mere routine, repetitive work is contemplated. Individuals in that job can be expected to perform:

>[A]ny combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one

REPORT AND RECOMMENDATION
Page - 9

>    department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope- sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments . . . May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

DICOT 239.567-010. Again, although the DICOT does not define routine, repetitive work, the multitude of tasks described above certainly imply an ability to perform at a higher level than at that which one would normally expect for an individual limited to routine, repetitive work.

The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DICOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DICOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. While the vocational expert did state that her testimony was consistent with the DICOT, a comparison of the DICOT with her testimony clearly indicates otherwise. See Tr. 399-400. Specifically, the DICOT describes more potential responsibilities than did the vocational expert. Even the vocational expert, however, admitted that the job of office helper involved more detailed tasks, such as operating a fax machine, delivering the mail, and answering a multi-line telephone system. Tr. 400.

V.   This Matter Should Be Remanded For An Award of Benefits

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

>    (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Here, the record has been fully developed and there are no outstanding issues to be resolved. The Commissioner has failed to show plaintiff is capable of performing any of the jobs the vocational expert identified at step five of the disability evaluation process. Because the Commissioner has the burden of

establishing that there are other jobs existing in significant numbers in the national economy plaintiff can perform, but, as discussed above, has failed to do so in this case, it is clear the ALJ would be required to find plaintiff disabled. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1560(2).  Thus, there is no useful purpose in remanding this matter for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for an award of benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 30, 2005**, as noted in the caption.

DATED this 8th day of December, 2005.

Karen L. Strombom
United States Magistrate Judge